******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ANTHONY L.*
(AC 39200)

DiPentima, C. J., and Sheldon and Norcott, Js.

*Syllabus*

Convicted of the crimes of sexual assault in the first degree, risk of injury to a child and sexual assault in the third degree in connection with his alleged sexual abuse of the minor complainant, J, the defendant appealed to this court. He claimed, inter alia, that the trial court improperly admitted certain evidence of his alleged uncharged, prior sexual misconduct involving J, which occurred prior to the time period during which the charged crimes allegedly occurred. He also claimed that the evidence was insufficient to support his conviction because J's testimony as to the charged misconduct lacked sufficient specificity to prove beyond a reasonable doubt the elements of the charged offenses. *Held*:

1. The evidence was sufficient to support the defendant's conviction of sexual assault in the first degree and risk of injury to a child: J described the charged misconduct with sufficient specificity to permit the jury reasonably to determine that the unlawful conduct engaged in by the defendant was digital penetration, and she testified that those acts of digital penetration within the charged time period were forceful and occurred more than once, which was sufficient for the jury reasonably to conclude that the state had proven the elements of sexual assault in the first degree and risk of injury to a child beyond a reasonable doubt; moreover, because it was undisputed that the defendant was J's uncle, the evidence was also sufficient to support the defendant's conviction of sexual assault in the third degree, which proscribes sexual intercourse with persons related to the defendant within certain degrees of kindred specified by statute (§ 46b-21), and J was not required to recall specific dates or additional distinguishing features of each incident, it having been sufficient that she provided a general time period.

2. The trial court did not abuse its discretion in permitting the state to introduce certain uncharged, prior sexual misconduct evidence involving the defendant, which was admitted to prove the defendant's motive and intent to sexually abuse J: where, as here, the prior misconduct evidence involved J, was of the same nature as the misconduct with which the defendant was charged, and concerned conduct that occurred before and during the period of time in which the charged crimes allegedly occurred, the materiality of the prior misconduct evidence to prove motive and intent was readily apparent, as it allowed the jury to learn that the defendant had a sexual interest in, and lustful inclinations toward, J; moreover, the challenged evidence was not more prejudicial than probative, as J testified that the acts of abuse during the time period in which the charged crimes occurred were the same as those she suffered before the time period at issue, and, thus, it was unlikely that the uncharged prior misconduct evidence unduly inflamed the jury, and the court gave the jury three cautionary instructions, which the jury was presumed to have followed, that served to overcome the prejudice that attends evidence of uncharged sexual misconduct.

Argued October 16, 2017—officially released February 6, 2018

*Procedural History*

Substitute information charging the defendant with the crimes of sexual assault in the first degree, risk of injury to a child and sexual assault in the third degree, brought to the Superior Court in the judicial district of Tolland, geographical area number nineteen, where the court, *Graham, J.*, denied the defendant's motion to preclude certain evidence; thereafter, the matter was tried to the jury; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Stephen A. Lebedevitch*, assigned counsel, for the appellant (defendant).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Elizabeth C. Leaming*, senior assistant state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. The defendant, Anthony L., was convicted, after a jury trial, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (2), and one count of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (2). On appeal, the defendant claims that (1) the trial court abused its direction in admitting evidence of uncharged misconduct and (2) there was insufficient evidence to support his conviction on all three charges. We disagree, and, accordingly, affirm the judgment of the trial court.

The jury was presented with the following evidence on which to base its verdict. The crimes with which the defendant was charged allegedly occurred between May 23, 2002, and December 31, 2003. At all relevant times, the minor complainant, along with her brother, P, and her parents resided in Massachusetts. The complainant's father was terminally ill. To prevent the complainant and her brother from seeing their father in this condition, their mother arranged for them to spend weekends and other holidays with their paternal uncle, the defendant, who lived in Connecticut. Sometimes, the defendant would pick up the children at their home in Massachusetts. At other times, he would meet their mother midway at a designated point. One day, while the complainant and the defendant were traveling in the defendant's car, and the complainant was sitting in the passenger seat, the defendant reached under the complainant's shirt and commented that "[she] was developing nicely." The complainant was either ten or eleven years old at this time.

In a subsequent visit to the defendant's house, the complainant asked the defendant if they could rent and watch a movie called "American Pie" because the complainant's mother previously had forbidden her from watching it; the defendant agreed. After renting the movie, the defendant and the complainant were driving back to the defendant's house when the defendant told the complainant that "he felt [she] needed an explanation as to body parts and whatnot so that way [she] could have a better understanding of the movie." The defendant then proceeded to put his hand "down [the complainant's] pants and put his fingers inside of [her]," and commented, "this is your cherry," and that "that was the start of intercourse" and "something [the complainant] needed to know so [she] understood the movie because the movie was about sex." The defendant then kept his fingers inside the complainant's vagina for the duration of the car ride to the defendant's house. Once there, the complainant and the defendant started watching the movie, with the complainant lying on a couch and the defendant sitting at the other end of the same couch. The defendant then ran his hand

up the complainant's leg and digitally penetrated her vagina. The defendant repeated this abuse after the complainant went to bed that night and again on the car ride back to the complainant's mother's house. These acts occurred before May, 2002, when the complainant was ten or eleven years old.

After that weekend, the defendant routinely would sexually abuse the complainant. The acts remained the same, i.e., digital penetration, and they would occur during car rides and when the complainant slept at the defendant's house. While there, the complainant and P would sleep in two separate bedrooms on the second floor. The bedroom where the complainant typically slept had a door that could not be locked. Here, after the complainant would fall asleep, the defendant would enter the bedroom and digitally penetrate her vagina. Afterward, he would sometimes whisper, "[y]ou're welcome," or, "I'm sorry, I can't help myself."

The defendant continued to sexually abuse the complainant after the death of her father in January, 2002, following which her visits to the defendant's house became less frequent. The final act of sexual abuse occurred in the complainant's home in Massachusetts, in December, 2003. There, the defendant digitally penetrated the complainant's vagina while sharing a blanket with her on a couch. The complainant was fifteen at the time of this last act. On December 4, 2013, the complainant reported her sexual abuse by the defendant to the Connecticut State Police. The defendant thereafter was arrested and charged with one count of sexual assault in the first degree, one count of risk of injury to a child, and one count of sexual assault in the third degree.

Before trial commenced, the defendant filed a motion in limine to establish fair procedures regarding the admissibility of evidence of uncharged misconduct. At the hearing on his motion in limine, the defendant sought to exclude evidence of acts of sexual abuse committed prior to May 23, 2002, which were not charged in the information.[1] The defendant also sought to exclude evidence of the acts committed in the complainant's home in Massachusetts, as they were outside the jurisdictional limits of Connecticut. After hearing argument, the trial court ruled that it would admit evidence of both sets of uncharged misconduct to prove motive and intent. Subsequently, the court gave the jury a cautionary instruction after the complainant testified as to uncharged misconduct that occurred prior to May 23, 2002.[2] The court gave another cautionary instruction after the complainant testified as to uncharged misconduct that occurred outside Connecticut.[3] Finally, the court gave a cautionary instruction as to both sets of uncharged misconduct evidence during its final charge. Following trial, the jury returned a verdict of guilty on all three counts; this appeal followed. Additional facts

will be set forth as necessary.

<h1 style="text-align:center">I</h1>

The defendant claims that there was insufficient evidence to support his conviction of one count of sexual assault in the first degree in violation of § 53a-70 (a) (1), one count of risk of injury to a child in violation of § 53-21 (a) (2), and one count of sexual assault in the third degree in violation of § 53a-72a (a) (2).[4] He argues that although the complainant testified in some detail as to the uncharged misconduct, her testimony as to the charged misconduct lacked sufficient specificity to prove the elements of any of the charged offenses beyond a reasonable doubt. Specifically, relying on our Supreme Court's decision in *State* v. *Stephen J. R.*, 309 Conn. 586, 72 A.3d 379 (2013), the defendant contends that the complainant needed to testify to at least one specific instance of sexual misconduct and provide a specific time period between May, 2002, and December, 2003, when the charged misconduct occurred. We disagree.

"The standard of review for claims of evidentiary insufficiency is well established. In reviewing a sufficiency of the evidence claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the [jury] if there is sufficient evidence to support [its] verdict. . . . In applying that test, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [jury's] verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Carrillo Palencia*, 162 Conn. App. 569, 575–76, 132 A.3d 1097, cert. denied, 320 Conn. 927, 133 A.3d 459 (2016).

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Stephen J. R.*, supra, 309 Conn. 593–94.

Section 53a-70 (a) provides that "[a] person is guilty

of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person . . . or by the threat of use of force against such other person . . . which reasonably causes such person to fear physical injury to such person . . . .” “‘Sexual intercourse’ means vaginal intercourse. . . . Penetration, however slight, is sufficient to complete vaginal intercourse . . . and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim’s body.” General Statutes § 53a-65 (2). “[D]igital penetration, however slight, of the genital opening, is sufficient to constitute vaginal intercourse.” (Emphasis omitted.) *State* v. *Albert*, 252 Conn. 795, 806–807, 750 A.2d 1037 (2000); see also *State* v. *Antonio A.*, 90 Conn. App. 286, 295, 878 A.2d 358 (digital penetration constitutes sexual intercourse by object manipulated by actor), cert. denied, 275 Conn. 926, 883 A.2d 1246 (2005), cert. denied, 546 U.S. 1189, 126 S. Ct. 1373, 164 L. Ed. 2d 81 (2006); *State* v. *Grant*, 33 Conn. App. 133, 141, 634 A.2d 1181 (1993) (same). Section 53-21 (a) provides that “[a]ny person who (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . .” Section 53a-65 (8) provides that “ ‘[i]ntimate parts’ means the genital area or any substance emitted therefrom, groin, anus or any substance emitted therefrom, inner thighs, buttocks or breasts.” Section 53a-72a (a) provides in relevant part that “[a] person is guilty of sexual assault in the third degree when such person (2) engages in sexual intercourse with another person whom the actor knows to be related to him or her within any of the degrees of kindred specified in section 46b-21.”[5]

In *State* v. *Stephen J. R.*, supra, 309 Conn. 586, our Supreme Court relied on an opinion of the California Supreme Court, *People* v. *Jones*, 51 Cal. 3d 294, 792 P.2d 643, 270 Cal. Rptr. 611 (1990), which delineated a three factor approach for determining whether generic testimony about sexual abuse can amount to sufficient evidence in a child abuse case. These factors were: (1) the complainant must describe the kind of act or acts committed with sufficient specificity to determine that unlawful conduct has occurred and to differentiate between the different types of proscribed conduct; (2) the complainant must describe the number of acts committed with sufficient certainty to support each of the counts alleged; and (3) the complainant must identify the general time period within which these acts occurred. *People* v. *Jones*, supra, 316. In *Stephen J. R.*, our Supreme Court applied the *Jones* factors. The court concluded that the complainant, by testifying that the

defendant had made her put his penis in her mouth and that he had put his tongue in her vagina, described the acts of fellatio and cunnilingus with sufficient specificity to support each of the counts alleged for sexual assault in the first degree and risk of injury to a child. *State* v. *Stephen J. R.*, supra, 594, 599.

In the present case, the complainant, while testifying, first described the acts of abuse she suffered prior to May, 2002, and stated that on multiple occasions the defendant penetrated her vagina with his fingers. The complainant was then questioned as to the nature and frequency of the defendant's misconduct between May, 2002, and December, 2003, the period in connection with which the defendant is charged. With respect to that particular time frame, she testified that the defendant's "acts were all the same." Subsequently, the following exchange occurred between the prosecutor and the complainant:

"[The Prosecutor]: Between May of 2002, specifically, the end of May of 2002 and December of 2003, when you described [the defendant] visiting your home in . . . Massachusetts, during that time frame did [the defendant] penetrate your vagina with his finger while at his home in [Connecticut].

"[The Complainant]: Yes.

"[The Prosecutor]: Can you tell us approximately how many times? Let me ask you this: Was it more than one time?

"[The Complainant]: Yes.

"[The Prosecutor]: Was it forceful or consensual?

"[The Complainant]: It was always forceful, never consensual.

"[The Prosecutor]: And were you between thirteen and fifteen years of age at that time?

"[The Complainant]: Yes."

As our Supreme Court concluded in *Stephen J. R.*, we conclude that the complainant in this case described the charged misconduct with sufficient specificity for the jury to determine that the unlawful conduct engaged in by the defendant was digital penetration. For the purposes of §§ 53a-70 (a) (1) and 53a-72a (a) (2), digital penetration constitutes sexual intercourse. See General Statutes § 53a-65 (2) (penetration may be committed by object); see also *State* v. *Antonio A.*, supra, 90 Conn. App. 295 (digital penetration constitutes sexual intercourse). The complainant testified that these acts of digital penetration within the charged period were forceful and that the defendant digitally penetrated her vagina more than once. This testimony was sufficient for the jury reasonably to conclude that the state had proven the elements of one count of sexual assault in the first degree and one count of risk of injury to a

child, beyond a reasonable doubt. Further, it is undisputed that the defendant is the complainant's paternal uncle. The evidence therefore was also sufficient for the defendant's conviction of one count of sexual assault in the third degree.

The defendant also argues that the complainant did not identify a specific time period between May, 2002, and December, 2003, in which the acts in question occurred. In *Stephen J. R.*, our Supreme Court noted that the requirement as to a time period was met because if the complainant provided a *general* time period. *State* v. *Stephen J. R.*, supra, 309 Conn. 600–601. The complainant in *Stephen J. R.* was not required to "recall specific dates or additional distinguishing features of each incident . . . ." Id., 601. The court clarified that additional details, aside from the general time period, might be relevant in assessing the credibility of the complainant's testimony but would not be essential for a conviction. Id. In the words of the California Supreme Court in *Jones*, "[d]oes the [complainant]'s failure to specify precise date, time, place or circumstance render generic testimony insufficient? Clearly not. As many of the cases make clear, the particular details surrounding a child molestation charge are not elements of the offense and are unnecessary to sustain a conviction." *People* v. *Jones*, supra, 51 Cal. 3d 315.

Consistent with our Supreme Court's opinion in *Stephen J. R.*, we find that the complainant testified with sufficient specificity for the jury reasonably to find the defendant guilty of all three charged offenses beyond a reasonable doubt.

II

The defendant next claims that the trial court abused its discretion by admitting evidence of uncharged misconduct because the evidence was more prejudicial than probative. He argues that the complainant testified in great detail as to the defendant's uncharged sexual misconduct that allegedly occurred prior to the period at issue in this case, i.e., May 23, 2002 to December 31, 2003, and as to the uncharged misconduct that allegedly occurred at the complainant's home in Massachusetts. The defendant argues that the complainant's testimony regarding sexual assaults that allegedly occurred within the period charged in the information, by comparison, was bereft of detail, and therefore that the only direct evidence of his guilt was the uncharged misconduct, which should have been excluded because it was more prejudicial than probative.[6] The state argues that the court did not abuse its discretion in admitting the challenged evidence to prove the defendant's motive and intent or in ruling that the probative value of such evidence outweighed its prejudicial effect. We agree with the state.

"As a general rule, evidence of prior misconduct is

inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused. . . . On the other hand, evidence of crimes so connected with the principal crime by circumstance, motive, design, or innate peculiarity, that the commission of the collateral crime tends directly to prove the commission of the principal crime, is admissible. The rules of policy have no application whatever to evidence of any crime which directly tends to prove that the accused is guilty of the specific offense for which he is on trial. . . . [Our Supreme Court has] developed a two part test to determine the admissibility of such evidence. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions [set forth in § 4-5 (b) of the Connecticut Code of Evidence, now § 4-5 (c)].[7] . . . Second, the probative value of the evidence must outweigh its prejudicial effect. . . . Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only whe[n] abuse of discretion is manifest or whe[n] an injustice appears to have been done. . . . On review by this court, therefore, every reasonable presumption should be given in favor of the trial court's ruling." (Footnote added; internal quotation marks omitted.) *State* v. *Donald H. G.*, 148 Conn. App. 398, 405, 84 A.3d 1216, cert. denied, 311 Conn. 951, 111 A.3d 881 (2014).

"In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Franko*, 142 Conn. App. 451, 460, 64 A.3d 807, cert. denied, 310 Conn. 901, 75 A.3d 30 (2013). "[T]he burden to prove the harmfulness of an improper evidentiary ruling is borne by the defendant . . . [who] must show that it is more probable than not that the erroneous action of the court affected the result." (Internal quotation marks omitted.) *State* v. *Donald H. G.*, supra, 148 Conn. App. 407.

The challenged evidence in this case was admitted to prove that the defendant had the motive and intent to sexually abuse the complainant. The evidence allowed the jury to learn that the defendant had a sexual interest in the complainant, upon which the defendant acted by sexually abusing the complainant before and during the charged period, and by continuing to do so until the last act of abuse in Massachusetts. "When instances of a criminal defendant's prior misconduct involve the same [complainant] as the crimes for which the defendant presently is being tried, those acts are especially illuminative of the defendant's motivation and attitude toward that [complainant], and, thus, of his intent as to the incident in question." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 167 Conn. App. 298, 310, 142 A.3d 1227, cert. denied, 323 Conn. 929, 149 A.3d 500 (2016). The materiality of the defendant's prior misconduct to prove motive and intent in this case is

therefore readily apparent. The act of abuse in Massachusetts is also material to prove motive and intent for the same reasons. The fact that it occurred after the charged misconduct does not render it inadmissible. See *State* v. *Bunker*, 89 Conn. App. 605, 632, 874 A.2d 301 (2005) ("[i]n Connecticut, as in almost all other jurisdictions, [e]vidence of crimes subsequent to the crime charged [is] also admissible for the same purposes as those committed prior to the charge" [internal quotation marks omitted]), appeal dismissed, 280 Conn. 512, 909 A.2d 521 (2006); see also *State* v. *McFarlane*, 88 Conn. App. 161, 165, 868 A.2d 130 (subsequent burglaries admissible to prove intent because sufficiently similar even though they occurred at malls rather than freestanding businesses), cert. denied, 273 Conn. 931, 873 A.2d 999 (2005). Because the misconduct in Massachusetts involved the same complainant and was of the same nature as the misconduct charged, it was material to prove the defendant's lustful inclinations toward the complainant.

We turn to the question of whether the challenged evidence was more probative than prejudicial. As a factual matter, we disagree with the defendant that the evidence of the charged conduct lacked specific details. After the complainant described the acts of abuse she suffered prior to May, 2002, she was questioned specifically as to the nature and frequency of the acts between May, 2002, and December, 2003, when the abuse ended. She testified that during this time, the defendant's acts toward her were "the same" as they had been before, all involving forcible digital penetration of her vagina, that they occurred on multiple occasions, and that they took place "in [the defendant's] car, on the couch, in the bedroom . . . ." The complainant further testified that on each such occasion, she would attempt to use her body to protect herself from the defendant by "clench[ing] [her] body," but that she never was successful in stopping him. This testimony does not lack detail in comparison to the testimony pertaining to the defendant's uncharged sexual misconduct in the car after renting the "American Pie" movie, while watching the movie itself, or at the complainant's house in Massachusetts. It is therefore unlikely, contrary to the defendant's claim, that evidence of the uncharged misconduct unduly inflamed the jury. "Although evidence of child sex abuse is undoubtedly harmful to the defendant, that is not the test of whether evidence is unduly prejudicial. Rather, evidence is excluded as unduly prejudicial when it tends to have some adverse effect upon a defendant *beyond tending to prove the fact or issue that justified its admission into evidence*." (Emphasis in original; internal quotation marks omitted.) *State* v. *Donald H. G.*, supra, 148 Conn. App. 408–409.

In light of these circumstances, we cannot conclude that the trial court abused its discretion in admitting

the challenged evidence. The court held a hearing and heard argument on whether the evidence should be excluded. It then analyzed the arguments in light of this court's decision in *Donald H. G.* and decided in favor of admission. Thereafter, the court gave the jury three separate cautionary instructions, twice upon the introduction of particular portions of the challenged evidence and once more during its final charge. This methodical approach negates the defendant's claim that the court abused its discretion by admitting the challenged evidence. The limiting instructions, which the jury presumably followed, also served, in this case, to overcome the prejudice that attends evidence of uncharged sexual misconduct. See *State* v. *Franko*, supra, 142 Conn. App. 467–68. Accordingly, we conclude that the trial court did not err in admitting evidence of the defendant's uncharged misconduct.

The judgment is affirmed.

In this opinion the other judges concurred.

\* In accordance with our policy of protecting the privacy interests of complainants who allege that they are the victims of sexual assault and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the complainant or others through whom the complainant's identity may be ascertained. See General Statutes § 54-86e.

[1] Previously, complainants of sexual abuse could prosecute their claims until only two years after attaining the age of majority. Effective May 23, 2002, however, they may do so until the age of forty-eight. See General Statutes § 54-193a. The acts of sexual abuse in this case that occurred prior to May 23, 2002, were therefore outside of the statute and not charged in the information.

[2] The court gave the following instruction: "[L]adies and gentlemen, I'm going to give what we call a cautionary instruction to you. You have heard testimony from [the complainant] that the defendant placed his fingers within her vagina and on one occasion touched her on dates before the date set forth in the information. That evidence is being admitted solely to show or establish his motive or purpose in committing the acts alleged in the information. That conduct that—preceding the dates alleged in the information, is not the subject of any criminal charge in this case and is not being admitted to prove the bad character of the defendant or any propensity by him to commit the conduct described in the information or charged in the information. You may not consider that evidence as establishing a predisposition on the part of the defendant to commit any of the crimes charge[d] or to demonstrate a criminal propensity to commit the crimes charged."

[3] The court gave the following instruction: "Ladies and gentlemen, you recall I gave an instruction a moment ago about any testimony by this witness as to the defendant touching her prior to the dates charged in the information. The information makes reference only to acts in . . . Connecticut. So, you just heard testimony from [the complainant] that the defendant placed his fingers inside her vagina in Massachusetts. That evidence is being admitted solely to show or establish his motive or intent in committing the crimes alleged in the information. That conduct is not the subject of any criminal charge in this case and is not being admitted to prove the bad character of the defendant or any propensity by him to commit the crimes alleged in the information. You may not consider that evidence as establish[ing] a predisposition on the part of the defendant to commit any of the crimes alleged or to demonstrate a criminal propensity to commit the crimes alleged."

[4] Although this is the second claim in the defendant's appellate brief, we address it first, because "if a defendant prevails on such a claim, the proper remedy is to direct a judgment of acquittal." *State* v. *Ramos*, 178 Conn. App. 400, 404, A.3d (2017).

[5] Such degrees of kinship include a "person's parent, grandparent, child, grandchild, sibling, parent's sibling, sibling's child, stepparent or stepchild. Any marriage within these degrees is void." General Statutes § 46b-21.

[6] The state argues that the defendant did not preserve his claim that the uncharged misconduct was the most direct evidence of his guilt because at trial, the defendant objected to that evidence only on the ground that it was more prejudicial than probative. We review the defendant's claim, however, as we understand it to be that the challenged evidence is more prejudicial than probative in part *because* it was the most direct evidence. We note additionally, that although the challenged evidence was admitted to prove motive or intent with a cautionary instruction against its use for propensity, evidence of other sexual misconduct is now admissible to prove propensity for aberrant and compulsive sexual behavior under § 4-5 (b) of the Connecticut Code of Evidence. See *State* v. *DeJesus*, 288 Conn. 418, 953 A.2d 45 (2008).

[7] Section 4-5 (c) (previously Section 4-5 [b]) of the Connecticut Code of Evidence provides: "Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony."